Bellacosa, J.
(concurring). I concur in the result reached by the majority but for different reasons. While the inconsistent verdict rationale is attractive and I am certain more readily understandable to most people, it nevertheless in my view impinges on the carefully drawn definitional integrity of our complementary legal codices, the Criminal Procedure Law and the Penal Law, especially CPL 300.30 (5) and Penal Law § 15.05 (3). Moreover, it undermines the particularly apt reasoning of our own recent cases (People v Glover, 57 NY2d 61; People v Green, 56 NY2d 427; People v Perez, 45 NY2d 204).
The facts and the issue are clearly stated in the majority opinion. Simply stated, there was one death but there were two homicide charges of equally serious rank, each of which, however, has a different culpable mental state. Common sense and understanding may be defied by the seeming incompatibility of an individual simultaneously intending an act and recklessly causing that same act, but the heart of this case is whether the Penal Law definitions and the Criminal Procedure Law provisions concerning instructions to juries countenance some legal reconciliation of those facially conflicting concepts.
I believe that the correct analysis and application of the many converging statutes, concepts and policies require a reversal and further proceedings on the surviving count of the indictment because the instructions to the jury were wrong in this case. We all reject the argument that CPL 300.40 (3) (a) authorizes a Trial Judge to instruct the jury that it may return a verdict of guilt on both of two equally ranked murder charges with respect to one homicide. That statute should not be construed so narrowly as though in some literal vacuum, but must be applied in relation to other statutes, policies and evidence in particular cases. My differences with the majority center on my conclusion that by conceptual analogy to People v Glover (57 NY2d 61, supra), People v Green (56 NY2d 427, supra) and People v Perez (45 NY2d 204, supra), the depraved indifference murder count, even though of equal degree of crime classification severity, is nevertheless of a lesser degree of culpability to intentional murder for concurrent count jury instruction purposes because the lesser culpable mental state, recklessness (see, People v Register, 60 NY2d 270, 278), is subsumed under the highest culpable mental state known to the criminal law — intent. Thus, by realistic application of statutes woven together in a complex, technical web, I conclude that depraved indifference murder, for purposes of in *533 struction to the jury, is a lesser category of crime which qualifies as an inclusory concurrent count even though the classification degree, for purposes of punishment upon conviction, is equivalent as a legal fiction to intentional murder. The importance of this analysis is that defendant then becomes entitled to have the jury instructed in the alternative with respect to the two theories of his criminal homicidal responsibility (CPL 300.40 [3] [b]). In addition to the lesser included count alternative instructions which the defendant got, he was also entitled to have the jury told that he could be found guilty of either intentional murder or depraved indifference murder or some lesser count of either one.
I cannot accept the majority’s view that intentional murder and depraved indifference murder are inconsistent counts under CPL 300.30 (5). That subdivision provides that "[t]wo counts are 'inconsistent’ when guilt of the offense charged in one necessarily negates guilt of the offense charged in the other” (emphasis added). Under the pertinent Penal Law definitions, an offender commits intentional murder when his conscious objective is to cause the death of another (Penal Law § 15.05 [1]) and commits depraved indifference murder when "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person” (Penal Law § 125.25 [2]). The culpable mental state for depraved indifference murder is recklessness (People v Register, 60 NY2d 270, supra), which is in turn defined as a person acting "when he is aware of and consciously disregards a substantial and unjustifiable risk that [a] result occur or that such circumstance exists” (Penal Law § 15.05 [3]). These controlling definitions do not in my view lend themselves to the facile mutual exclusivity which the majority gives them. The guilt of one offense does not "necessarily negate” guilt of the other because the carefully drawn language does not by its words so state, and because there may be circumstances, where in the split second it takes to form and hold a culpable mental state, that a person can intend an act and simultaneously be "aware of and consciously disregard” a risk. Intent and conscious disregard may be compatible rather than inconsistent in the workings of the human mind and under the statute. And those are the words of the statutes themselves.
It should be noted, of course, that the majority’s reference to People v Brown (32 AD2d 760, affd without opinion 27 *534 NY2d 499) is not helpful because Brown was decided prior to the adoption of the Criminal Procedure Law and the Penal Law, whose new definitions control and must be construed in order to decide this case on a correct rationale.
A useful exercise to cross-check the validity of my analysis is to view defendant’s criminal homicidal liability as if it were on two charts. Each chart has a top count with lesser included counts under each top count. On chart 1, the top count is intentional murder with lesser included counts going down to reckless manslaughter in the second degree. Everyone agrees that with respect to the counts on this chart the instructional choices must be given in the alternative, that is, the jury can select only one guilty count from chart 1. So the jury in this case selected the top count — intentional murder in the second degree. But chart 2’s top count of depraved indifference murder is also ranked as murder in the second degree and it, too, contains lesser included counts which were charged to the jury in the alternative, as everyone would agree is correct. In this respect, the jury selected not the top count for guilt but the lesser included offense of reckless manslaughter in the second degree. The nub of the People’s argument on this point is that the jury could find guilty counts on chart 1 and on chart 2 at whatever level or degree. Defendant’s argument, on the other hand, is that he is entitled to have the jury select only one guilty count from either chart 1 or chart 2. There is more legal and common sense in defendant’s argument, not simply because there is only one homicide victim, but because otherwise the jury could have found defendant guilty twice for the identical crime against a single victim, e.g., reckless manslaughter in the second degree as a lesser of intentional murder and, again, reckless manslaughter in the second degree as a lesser of depraved indifference murder. These surely do not result in an inconsistent verdict for they are identical, but they should have been offered in the alternative only under the inclusory concurrent count theory and provision of the Criminal Procedure Law.
In People v Green (56 NY2d 427, supra), we concluded that second degree assault was a lesser included offense of assault in the first degree, notwithstanding the fact that the degree of culpability specified for each differs from the other. In so holding, we rejected the prosecution’s "overly mechanical reading” of the term "lesser included offense” which would have allowed a charge down only when "under every set of circumstances, commission of the greater offense necessarily *535 involved commission of the lesser”. Instead, we recognized that the various culpable mental states (i.e., intentional, knowingly, reckless and criminal negligence) "involve 'fine gradations along but a single spectrum of culpability’, the lower mental states being necessarily included in the higher forms of mental culpability” and "that the kaleidoscopic nature of the varying degrees of mental culpability warranted the broader view of the statutory definition” (People v Green, supra, at 432-433, citing People v Stanfield, 36 NY2d 467, 473). By parallel reasoning, a similarly flexible interpretation with respect to determining what are inclusory or noninclusory concurrent counts for purposes of alternative instructions to the jury would make good sense and good law in the framework of> our statutory codifications. This would also help to bring some order to the necessarily intricate workings of statutes which sought to catalogue the myriad situations that can occur, recognizing that some situations will never precisely fit (see, e.g., People v Mussenden, 308 NY 558; People ex rel. Maurer v Jackson, 2 NY2d 259; Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 300.40, at 578; CPL 300.50, at 609-610).
Even though I concur in the result which the majority reaches, I am compelled to express my separate rationale because the conclusory interpretation of the verdict as "inconsistent” does not correctly synchronize the careful definitional infrastructure of two massive codifications.
Chief Judge Wachtler and Judges Simons and Hancock, Jr., concur with Judge Kaye; Judge Bellacosa concurs in result in a separate opinion; Judges Alexander and Titone taking no part.
On defendant’s appeal, order reversed and a new trial ordered. The People’s appeal dismissed.