People v McIntosh (2018 NY Slip Op 04455)





People v Mcintosh


2018 NY Slip Op 04455


Decided on June 15, 2018


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 15, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., PERADOTTO, LINDLEY, CURRAN, AND TROUTMAN, JJ.


300 KA 14-01137

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
JAMES R. MCINTOSH, DEFENDANT-APPELLANT. 






TIMOTHY P. DONAHER, PUBLIC DEFENDER, ROCHESTER (JAMES A. HOBBS OF COUNSEL), FOR DEFENDANT-APPELLANT.
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (LEAH R. MERVINE OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Monroe County Court (Vincent M. Dinolfo, J.), rendered June 19, 2014. The judgment convicted defendant, upon a jury verdict, of murder in the second degree and manslaughter in the first degree. 
It is hereby ORDERED that the judgment so appealed from is modified on the law by reversing that part convicting defendant of manslaughter in the first degree and dismissing count two of the indictment and as modified the judgment is affirmed.
Memorandum: Defendant appeals from a judgment convicting him, upon a jury verdict, of murder in the second degree (Penal Law
§ 125.25 [1]) and manslaughter in the first degree (§ 125.20 [1]), arising from an altercation that occurred between defendant and one of his roommates (hereafter, victim) in their apartment. Both defendant and the victim had consumed alcohol earlier in the evening, and during the altercation defendant possessed a knife and caused one non-lethal and one fatal stab wound to the victim. Defendant and the victim shared the apartment with a third man who heard the altercation from inside his bedroom but did not see it. Although we agree with defendant that County Court erred in refusing to charge the jury with two lesser included charges requested by defendant, we conclude that the error is harmless under the circumstances of this case.
To establish entitlement to a charge on a lesser included offense, "a defendant must show both that the greater crime cannot be committed without having concomitantly committed the lesser by the same conduct, and that a reasonable view of the evidence supports a finding that he or she committed the lesser, but not the greater, offense" (People v James, 11 NY3d 886, 888 [2008]; see People v Van Norstrand, 85 NY2d 131, 135 [1995]; People v Glover, 57 NY2d 61, 63 [1982]; see also CPL 1.20 [37]; 300.50 [1]). With respect to the first prong, it is undisputed that the requested charges of manslaughter in the second degree (Penal Law § 125.15 [1]) and criminally negligent homicide (§ 125.10) are each lesser included offenses of murder in the second degree (§ 125.25 [1]; see People v Rivera, 23 NY3d 112, 120 [2014]; People v Morris, 138 AD3d 1408, 1410 [4th Dept 2016], lv denied 27 NY3d 1136 [2016]) and manslaughter in the first degree (§ 125.20 [1]; see People v Helliger, 96 NY2d 462, 467 [2001]; People v Johnson, 160 AD2d 1024, 1025 [2d Dept 1990]; People v Hoy, 122 AD2d 618, 618-619 [4th Dept 1986]).
The issue whether the court erred in refusing to charge the requested lesser included offenses thus turns on the second prong, i.e., " whether on any reasonable view of the evidence it is possible for the trier of the facts to acquit the defendant on the higher count[s] and still find him guilty on the lesser one[s]' " (People v Hull, 27 NY3d 1056, 1058 [2016]). "In assessing whether there is a reasonable view of the evidence,' the proof must be looked at in the light most favorable to [the] defendant' " (Rivera, 23 NY3d at 120-121, quoting People v Martin, 59 NY2d 704, 705 [1983]). The "inquiry is not directed at whether persuasive evidence of guilt of the greater crime exists . . . but [instead is directed at] whether, under any reasonable view of the [*2]evidence, it is possible for the trier of fact[] to acquit defendant on the higher count[s] and still find him guilty of the lesser one[s]" (Van Norstrand, 85 NY2d at 136).
Viewing the evidence in the light most favorable to defendant, we conclude that there is a reasonable view of the evidence that defendant acted either recklessly or with criminal negligence, but not with intent to cause death (Penal Law § 125.25 [1]) or with intent to cause serious physical injury (§ 125.20 [1]). According to his testimony, defendant was confronted at his bedroom door by the victim, who was apparently angry about defendant's contact with a certain woman and repeatedly threatened defendant with physical harm. Defendant was afraid and feared that the victim was going to kill him. The victim attempted to force his way into defendant's bedroom and eventually grabbed defendant by the shoulder. Defendant testified that he then picked up the knife and "[p]oked it . . . towards [the victim's] leg," but he did not know at that point if he had struck the victim. The Medical Examiner, who testified during the People's case-in-chief, characterized the resulting stab wound to the victim's leg as "superficial and non-lethal." Defendant's action further enraged the victim, prompting him to come forward toward defendant, at which point defendant raised the knife up to about his own chest level. Defendant testified that he "raised the knife up and poked again, jabbed again, and then [the victim] stopped and . . . backed off." Defendant testified that he did not know it at the time, but he apparently struck the victim in the chest with the knife. The victim stopped at that point, took about three steps backward, and then fell against the wall and to the floor with—as later determined by the Medical Examiner—a fatal, four-inch-deep stab wound that had penetrated his heart. Defendant immediately called 911.
Defendant denied that he intended to kill the victim or to inflict serious physical injury. Defendant "was just hoping that [the victim] would back off and he would get scared, back off and get out of there, get away from [the bedroom] door, and get out of . . . [defendant's] room so [defendant] could close [his] door and lock it." According to defendant, he did not perceive that his actions would result in the victim's death. Although defendant acknowledged on cross-examination that he intended to "poke" the victim the second time, defendant maintained that he was merely trying to hold off the victim to stop him from attacking and "just intended to protect [him]self," but did not intend to hurt the victim or put the knife into him. Defendant stood his ground and put the knife out and poked the victim, who came forward into the knife. The Medical Examiner's testimony that it took "some force" for the knife to penetrate four inches into the victim's chest does not render defendant's account unreasonable, particularly inasmuch as the Medical Examiner conceded on cross-examination that some of the force necessary to stab the victim could have been provided by the victim himself moving into the knife, which is consistent with defendant's testimony. Likewise, the Medical Examiner's testimony that the victim was stabbed in a downward direction, which she opined was inconsistent with a "poke," was based upon the victim standing upright, but defendant testified that the victim was hunched forward, like a "linebacker."
Contrary to the People's contention and the court's determination, the evidence that defendant's underlying physical act of "poking" the victim with the knife was deliberate does not preclude a finding that, with respect to defendant's culpable mental state relative to the result of causing the victim's death (see Penal Law
§§ 125.15 [1]; 125.10), defendant acted recklessly in that he was "aware of and consciously disregard[ed] a substantial and unjustifiable risk that such result [would] occur" (§ 15.05 [3]) or acted with criminal negligence in that he "fail[ed] to perceive a substantial and unjustifiable risk that such result [would] occur"
(§ 15.05 [4]; see People v Heide, 84 NY2d 943, 944 [1994]; People v Usher, 39 AD2d 459, 460-461 [4th Dept 1972], affd 34 NY2d 600 [1974]). Moreover, given the number and nature of the stab wounds here—the first of which resulted in a superficial and non-lethal wound to the victim's leg, which was consistent with defendant's testimony that he was simply attempting to get the victim to back away, and the second of which may have been caused, at least in part, by the victim moving forward into the knife—we conclude that this case is distinguishable from those in which the number, depth, and severity of the wounds are such that there is no reasonable view of the evidence to support a finding other than an intent to cause death or serious physical injury (cf. e.g. People v Stanford, 87 AD3d 1367, 1368 [4th Dept 2011], lv denied 18 NY3d 886 [2012]; People v Collins, 290 AD2d 457, 458 [2d Dept 2002], lv denied 97 NY2d 752 [2002]). Similarly, we conclude that there is a reasonable view of the evidence that defendant, although admittedly acting to protect himself with the knife, did not intend to make contact with the victim [*3]at all or that, if he did intend to make contact by "poking" the victim, defendant intended only to get the victim to back off and did not intend to harm him (cf. People v Henley, 145 AD3d 1578, 1579 [4th Dept 2016], lv denied 29 NY3d 998 [2017], reconsideration denied 29 NY3d 1080 [2017]). Based upon the foregoing, we conclude that the court erred in refusing to charge the jury on the requested lesser included charges of manslaughter in the second degree and criminally negligent homicide.
We further conclude, however, that the error is harmless under the circumstances of this case. As set forth by the Court of Appeals, "where a court charges the next lesser included offense of the crime alleged in the indictment, but refuses to charge lesser degrees than that, . . . the defendant's conviction of the crime alleged in the indictment forecloses a challenge to the court's refusal to charge the remote lesser included offenses" (People v Boettcher, 69 NY2d 174, 180 [1987]). The premise underlying a determination of harmless error is that, when a jury convicts the defendant of the top (i.e., highest) charged offense and thereby excludes from the case the next lesser (i.e., intermediate) included offense, the verdict dispels any significant probability that the jury, had it been given the option, would have acquitted the defendant of both the highest and intermediate charged offenses and instead convicted the defendant of the even lesser (i.e., remote) included offense that was erroneously not charged (see id.; People v Richette, 33 NY2d 42, 45-46 [1973]; see generally People v Crimmins, 36 NY2d 230, 241-242 [1975]). Thus, cases applying the analysis set forth in Boettcher hold that where the trial court charges the jury with the highest offense of murder in the second degree and the intermediate offense of manslaughter in the first degree, and the jury convicts the defendant of murder in the second degree, the defendant's challenge on appeal to the court's denial of a request to charge the remote offenses of manslaughter in the second degree and/or criminally negligent homicide is foreclosed, i.e., any error is harmless (see People v Pinero, 143 AD3d 428, 429 [1st Dept 2016], lv denied 29 NY3d 1000 [2017]; People v Burkett, 101 AD3d 1468, 1472-1473 [3d Dept 2012], lv denied 20 NY3d 1096 [2013]; People v Hira, 100 AD3d 922, 923 [2d Dept 2012], lv denied 21 NY3d 943 [2013]; People v Williams, 273 AD2d 824, 826 [4th Dept 2000], lv denied 95 NY2d 893 [2000]; People v Vega, 155 AD2d 632, 633 [2d Dept 1989], lv denied 75 NY2d 819 [1990]).
Here, the court charged the jury with the highest indicted offense of murder in the second degree and the intermediate indicted offense of manslaughter in the first degree, but improperly refused to charge the jury on the remote lesser included offenses of manslaughter in the second degree and criminally negligent homicide. The court also erred in failing to instruct the jury to consider the charged offenses in the alternative by deliberating thereon in decreasing order of culpability and proceeding to consider manslaughter in the first degree only if it first unanimously acquitted defendant of the more serious offense of murder in the second degree (see CPL 300.50; Helliger, 96 NY2d at 464-466; Boettcher, 69 NY2d at 181-183; see generally Matter of Suarez v Byrne, 10 NY3d 523, 534 [2008], rearg denied 11 NY3d 753 [2008]). The jury found defendant guilty of murder in the second degree and manslaughter in the first degree. Contrary to the dissent's assertion, had the jury acquitted defendant of the highest offense of murder in the second degree and convicted him of the intermediate offense of manslaughter in the first degree only, the court's error in refusing to charge the remote lesser included offenses would have constituted reversible error (see People v Brockett, 74 AD3d 1218, 1220 [2d Dept 2010]), inasmuch as such a verdict would fail to dispel any significant probability that the jury, had it been given the option, would have instead convicted defendant of a remote lesser included offense (see Richette, 33 NY2d at 45-46; People v Ivisic, 95 AD2d 307, 312-313 [2d Dept 1983]). By contrast, a determination of harmless error is warranted where, as here, the jury convicts the defendant of the highest charged offense, thereby foreclosing the defendant's contention that there was a significant probability that, had the jury been given the option, it would have rejected both the highest charged offense and the intermediate lesser included offense in favor of conviction of a remote lesser included offense (see Boettcher, 69 NY2d at 180).
Contrary to defendant's contention and the dissent's assertion, People v Green (56 NY2d 427, 435-436 [1982], rearg denied 57 NY2d 775 [1982]) does not compel reversal. There, the defendant was convicted of attempted murder in the second degree (Penal Law §§ 110.00, 125.25 [1]) and assault in the first degree (§ 120.10 [1]), and the Court of Appeals determined that the trial court committed reversible error by failing to charge assault in the second degree (§ 120.05 [4]) as a lesser included charge of assault in the first degree. The assault charges in Green were [*4]not, in fact, lesser included offenses of attempted murder in the second degree (see e.g. People v Littlejohn, 141 AD2d 850, 850-851 [2d Dept 1988]; People v Lord, 103 AD2d 1032, 1033 [4th Dept 1984]). Thus, the requested charge of assault in the second degree was not a remote lesser included offense; rather, it was the next lesser included offense of assault in the first degree. Inasmuch as the defendant stood properly convicted of assault in the first degree, which was not a lesser included offense of attempted murder in the second degree (see Littlejohn, 141 AD2d at 850-851), the error in failing to charge assault in the second degree was not harmless because the verdict did not reveal that there was no significant probability that the jury would have instead convicted the defendant of assault in the second degree if given that option. The situation in Green is thus distinguishable from the case before us because, here, defendant stands properly convicted of the highest charged offense and the error purportedly requiring reversal is the court's failure to charge the jury on remote lesser included offenses.
Contrary to the dissent's further suggestion, where, as here, the jury returns a verdict comprised of inclusory concurrent counts (see CPL 300.30 [4]) after not being instructed to consider such counts in the alternative, we are compelled to credit the jury's finding of guilt beyond a reasonable doubt on the greater count, which is deemed a dismissal of every lesser count (see CPL 300.40 [3] [b]; People v Lee, 39 NY2d 388, 390 [1976]; People v Grier, 37 NY2d 847, 848 [1975]; People v Fort, 292 AD2d 821, 821 [4th Dept 2002], lv denied 98 NY2d 710 [2002]). For the reasons stated above, the jury's verdict here demonstrates that the court's error in refusing to charge the requested lesser included charges is harmless. As the People correctly concede, the charge of manslaughter in the first degree must be dismissed as a lesser inclusory concurrent count of murder in the second degree (see CPL 300.30 [4]; People v Bank, 129 AD3d 1445, 1448-1449 [4th Dept 2015], affd 28 NY3d 131 [2016]; see also Hull, 27 NY3d at 1058). We therefore modify the judgment accordingly.
All concur except Lindley and Curran, JJ., who dissent and vote to reverse in accordance with the following memorandum: We respectfully dissent. We agree with the majority that, given the evidence at trial that defendant did not act with the intent to cause death or serious physical injury to the victim, County Court erred in refusing defendant's request to charge manslaughter in the second degree (Penal Law § 125.15 [1]) and criminally negligent homicide (§ 125.10) as lesser included offenses of murder in the second degree (§ 125.25 [1]) and manslaughter in the first degree (§ 125.20 [1]; see generally People v Green, 56 NY2d 427, 432-434 [1982], rearg denied 57 NY2d 775 [1982]). In our view, however, the error is not harmless under the circumstances of this case. Instead, the error was compounded when the court erred in failing to instruct the jurors to consider the charged offenses in the alternative. As a result of that second error, the jury convicted defendant of both murder in the second degree and manslaughter in the first degree, a lesser inclusory concurrent count of murder in the second degree. We would therefore reverse the judgment and grant defendant a new trial.
As the majority correctly notes, the Court of Appeals and this Court have held that "where a court charges the next lesser included offense of the crime alleged in the indictment, but refuses to charge lesser degrees than that, . . . the defendant's conviction of the crime alleged in the indictment forecloses a challenge to the court's refusal to charge the remote lesser included offenses" (People v Boettcher, 69 NY2d 174, 180 [1987]; see People v Williams, 273 AD2d 824, 826 [4th Dept 2000], lv denied 95 NY2d 893 [2000]). The rationale of those cases is that, because the jury convicted defendant of the greatest offense, thereby implicitly rejecting the next lesser included offense, the failure to charge even remoter lesser included offenses could not have impacted the jury's verdict (see Boettcher, 69 NY2d at 180). Indeed, as the majority correctly notes, "[a] verdict of guilty upon the greatest count submitted is deemed a dismissal of every lesser count submitted" (CPL 300.40 [3] [b]).
Here, however, there was also a verdict of guilty on the lesser count due to the court's additional error in failing to charge the two counts in the alternative (see CPL 300.40 [3] [b]; 300.50 [4]), and it is well settled that "[a] verdict of guilty upon a lesser count is deemed an acquittal upon every greater count submitted" (CPL 300.40 [3] [b]). Due to the fact that the jury convicted defendant of both the greater count and the lesser count, defendant correctly contends that we "cannot know with certainty how the jury's deliberations would have been impacted if [it] had been instructed that [it] could convict [on] only one of the two counts." We are thus unable to determine whether we should deem the lesser count dismissed or deem there to be an acquittal on the greater count. Contrary to the Boettcher line of cases, the jury, by its verdict, did [*5]not "exclude[] from the case" or " necessarily eliminate[]' " all other lower degrees (People v Richette, 33 NY2d 42, 45-46 [1973]; cf. Boettcher, 69 NY2d at 180), and the verdict cannot be deemed an "implicit rejection" of the lesser included offense that was charged (People v Gorham, 72 AD3d 1108, 1109 [2d Dept 2010], lv denied 15 NY3d 773 [2010]; cf. People v Cephas, 91 AD3d 668, 669 [2d Dept 2012], lv denied 19 NY3d 958 [2012]).
As the Court of Appeals has written, "[t]he fact that defendant was convicted of both offenses . . . does not establish that there was no significant probability the jury would have acquitted him of those charges and convicted him of [the remote lesser included offenses] if that option were available to it" (Green, 56 NY2d at 435-436). We note that the Court in Boettcher recognized that where, as here, the jury convicts the defendant of the lesser offense charged, there would be a basis for that defendant to claim that he or she "was prejudiced by the court's refusal to charge" the more remote lesser included offenses (id. at 180).
Finally, inasmuch as both murder in the second degree under Penal Law § 125.25 (1) and manslaughter in the first degree under section 125.20 (1) require either an intent to cause death or an intent to cause serious physical injury and the defense submitted evidence that defendant did not act with such intent, the failure to charge manslaughter in the second degree and criminally negligent homicide, which require lesser culpable mental states, cannot be deemed harmless because "the jury was not given a charge for an offense which would permit it to determine that the defendant [acted with a lesser culpable mental state]" (People v Gilmore, 243 AD2d 726, 727 [2d Dept 1997]).
Entered: June 15, 2018
Mark W. Bennett
Clerk of the Court